## Lake Erie & Western R. R. Co. v. John Deutsch.

1. RAILROADS—*Failure to Keep Fences in Repair—Notice.*—The statute prescribes no particular form of description of the land in the notice requiring a railroad company to repair fences along its right of way. A description is sufficient which clearly indicates the particular land intended.

2. SAME—*The Rule as to Fences Not upon the Line of the Right of Way.*—The rule that a party who, instead of building the fence upon the

line of the right of way, builds it so as to fence in a part of the right of way, can not recover of the railroad company under the statute, does not apply where the railroad company builds the fence within this right of way, and the owner of the lands puts repairs upon it, etc.

3. SAME—*Penalty for Failure to Build Fence—Measure of Recovery.*—The measure of the recovery by an adjoining land owner under section 4 of the act in relation to fencing and operating railroads, affirmed March 31, 1874, in an action against a railroad company for a failure to build a fence, is double the reasonable value of the repairs made and not double the actual cost.

Transcript from a Justice of the Peace.—Action for repairing a fence under the statute. Appeal from the Circuit Court of McLean County; the Hon. Thomas F. Tipton, Judge, presiding. Heard in this court at the November term, 1894. Affirmed. Opinion filed June 3, 1895.

A. E. DeMange, attorney for appellant.

Livingston & Bach, attorneys for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

Appellee owned the northwest quarter of section 15, T. 23 N., R. 5 east of third P. M., adjoining the right of way of appellant, which ran east and west along its south side. They were separated by a fence on the north side of the track but within the right of way, which was built in 1872. From that time appellee and his predecessors in title openly occupied and used the land north of this fence up to it.

On October 28, 1892, appellee served on appellant a written notice to " repair your fence between your right of way and my land in the west half of section 15, T. 23 N., R. 5, E. of 3d P. M., by placing thereon a good and sufficient plank fence, complying with the statute. The land might be further described as lying east of the village of Arrowsmith," and adding, " I shall expect you to do it within ten days, as required by statute, and on your failure to make repairs I shall proceed according to law."

Nothing was done by either party in pursuance of this notice until about seven months thereafter, when appellant

began to build a new fence on what is said to have been the true line, which would have taken into the right of way a row of peach and maple trees and a carriage shed of appellee; to prevent which he asked as an accommodation that it be put upon the old line, or a jog made which would leave them on his side of the fence; and this was done by building on the old line. The fence so built was claimed to be the usual standard fence built by this company, of posts twelve and a half feet apart and six barbed wires, of which the lowest was four inches above the ground, the next four above that, and the others at increasing distances from the one below, up to eleven inches.

On May 19th, the day before it was completed, appellee served on the company another notice, addressed to it as follows:

" You are hereby notified that the fence you are repairing, to comply with my notice dated October 28, 1892, requesting you to put a good and sufficient plank fence, complying with the statute, between your right of way and my land in the west half of section fifteen (15), town twenty-three (23) north, range five (5), east of the third P. M., is not in compliance with the statute, and is not " suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting onto the railroad. The posts are too far apart, and it requires planks to keep hogs from getting on the track. I give you this notice at this time, so that you can rectify the mistake if you desire to do so. I shall hold you to a strict compliance with the statute, and if your men leave the fence uncompleted to my satisfaction, I shall repair the same so as to keep my hogs from getting killed, and will recover the costs of such repairs, together with attorney's fees, from you."

Appellant having paid no attention to this notice, appellee, after the lapse of ten days from its service, nailed boards over each of the three lower wires, ripped off the fourth, and put it between the fifth and sixth, and placed additional posts where necessary for nailing the ends of the boards. He then brought this suit before a justice of the peace to

recover the penalty prescribed by Section 66, Ch. 114 of the R. S., claimed to have been incurred by appellant's refusal to make the necessary repair. On appeal the parties waived a jury, and the trial by the court resulted in a finding and judgment for the plaintiff for $50 and his costs, to reverse which this appeal was taken.

Section 65 requires that the notice to build or repair "shall describe the lands on which said fence, gates, bars or farm crossings are required to be built or repaired," and the first point urged against the judgment is that the notice in this case did not comply with that requirement. Plaintiff testified that his land was all in the northwest quarter of the section specified and north of the appellant's right of way, and it is said that the notice describing it as in the west half of it is as indefinite as if it had been described as in the section or in the town of Arrowsmith.

The statute prescribes no particular form of description. It was sufficient if it clearly indicated to appellant the particular land intended. The one given shows unmistakably not only that it was in the west half of the section, but that it adjoined the right of way and lay next east of the village of Arrowsmith. In the absence of all pretense to the contrary, it may be presumed that this village was north of the right of way, for if it was not, appellant must have known, and would have shown it, to vitiate the notice. The description, therefore, was of that part of the west half of said section which was next east of the village and north of and adjoining the right of way, and that we think was sufficiently definite. The company had no difficulty in understanding it.

But it is said that the fence to which appellee made the plank additions was wholly upon the right of way, and not on its "side." The fences which the statute requires the railroad company to erect and maintain are "fences on both sides of its road" (Sec. 62); and it has been held that where the adjoining owner built the fences on each side of the track, but intentionally put them two feet inside the right of way, he could not recover of the company under

section 66. The provision, being penal, must be strictly construed, and the party claiming the penalty must bring his case strictly within it. The court say in substance, if he may intentionally and of set purpose take in four feet in width of the company's right of way, there would be no limit to his right in that direction short of the railway's actual track. W., St. L. & P. Ry. Co. v. Zeigler, 108 Ill. 304.

The fact that here the company itself built and rebuilt the fence, well knowing just where it was with reference to that side of its road, takes this case out of the reason and rule in that. So knowing, it erected the original fence as and for the fence required by the statute, and for more than twenty years the adjoining owners on the north openly and exclusively held, occupied and used the land up to it. There was nothing else during all that time " to prevent their stock from getting on the railroad." Less than three years before the one in question was built, appellee bought and took possession of it, fenced as it was, and ever since has used it in like manner. He has not, by any act of his, deprived appellant of one inch of its right of way, nor added to, nor increased the expense or difficulty of the performance of any duty imposed upon it by law. Before the building of the new fence, its attention was called to the true line, and it voluntarily and knowingly rebuilt upon the old one. That this was done for the accommodation and at the request of appellee is immaterial. Had it built a sufficient fence, and fhe had built another upon the true line, after notice, and sought to recover double its value, it would have had a more just cause of complaint than now. Having erected it with knowledge that it was not upon the side of its road, if such is the fact, and as a compliance with appellee's notice, assuming it to be the fence required by the statute, the company should not be heard, upon complaint of its insufficiency, to avoid the penalty by proving that it is not on the side of the road.

Appellee testified that he paid for the labor and materials used in making the repairs the sum of $52.86, and one witness for appellant testified that the same object could have

been accomplished with wires and additional posts at a total cost of $17.97. The court rendered a judgment for plaintiff for $50. Neither party is quite satisfied with this result.

Appellant insists that if it was proper to find anything for the plaintiff, it should have been just double the one or the other of the sums stated in the testimony. The language of the statute is " double the value," that is, the reasonable value, of the repairs made, and not double the actual cost, or the least cost at which, in the opinion of a witness, the same object could have been accomplished. What was the reasonable value of the repairs in this case, was a question of fact, as to which the court, acting as a jury, should have formed the best judgment it could, from the meagre evidence produced. It was not objected to as improper in itself, and it was the fault of the parties that further and more satisfactory proof was not offered. By one of the propositions held to be the law, the court recognized the statute as obligatory and forbidding it to fix the value arbitrarily or by a mere guess. The result shows that it was found to be $25, and that the interest thereon at one per cent per month from the time the repairs were made was disregarded under the rule *de minimis*. What, if any, disposition to burden the company was shown by appellee's appearance and manner on the witness stand we do not know; but we can not say that the judgment of one who heard and saw him was not justified. It was not for the plaintiff to dictate the material to be used or insist that the repairs should be made to his satisfaction. The company was to judge, at its peril, of the sufficiency of the fence, and the plaintiff, at his, of the kind and amount of repairs he should make; but the jury must decide as to both, and determine the reasonable value of the latter under all the circumstances in evidence.

The law requires a fence suitable and sufficient to prevent sheep, as well as hogs, cattle, horses and other stock from getting on the railroad. If by reason of depression in the surface of the land, a wire fence with posts thirteen feet apart will not restrain hogs, the railroad company can not lawfully impose upon the farmer the burden of filling

up such depressions or supplementing its standard fence at such points. On the line of this fence there were a number of these places at which the lowest wire was from eight to eleven inches above the ground; at one place thirteen. There is quite enough evidence in the record to show that such a fence on such land is not hog-tight.

The judgment will be affirmed.